No. 28,875.

JESSE SOWDER, *Appellee*, v. J. A. LAWRENCE, EMMA MENEFEE, O. R. EATON, R. L. LEE and C. A. LAWRENCE, Partners as THE LAWRENCE MOTOR COMPANY, *Appellants.*

(281 Pac. 921.)

Opinion filed November 9, 1929.

*E. E. Pedroja,* of Eureka, *W. C. Harris, O. S. Samuel* and *W. L. Harris,* all of Emporia, for the appellants.

*T. C. Forbes* and *C. C. Carper,* both of Eureka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The plaintiff in this action, the owner of a truck which had been mortgaged by the original purchaser and then sold to this plaintiff's vendor, recovered a judgment against the defendants, who maintained a sales agency, garage and repair shop, for damages sustained by him in being deprived of the use of the truck for several days when left at the shop for repairs, it being held by the defendants as original mortgagee under an alleged lien of the mortgage for $125, balance due on a note given by the original purchaser to the defendants at the time of the purchase of the truck. In the trial court a question as to a mechanic's lien for repairs was involved, but that feature is not now before us on review.

The plaintiff claimed damages for being deprived of the use of his truck six days by the defendants, who demanded that he pay the $125 balance on the note held by them which they represented to him was secured by the mortgage not yet released. He alleged that he believed their representations as to its being a mortgage lien, and after six days procured the money from a bank and paid the amount in full less interest, which was by agreement remitted. That later he learned it was not a mortgage lien and that the representations were not true, but alleged they were made to mislead and deceive him, and the detention of the truck for the six days was wrongful and unlawful. The answer sets out at length the entire transaction of the sale and the mortgage of the truck, and denies generally the allegations of the petition, and alleged accord and satisfaction in the full and complete settlement made when the truck was surrendered.

The verdict gave the plaintiff damages for wrongful detention of the truck, including the return of the $125, and the jury answered four questions submitted to it, the first two questions and answers being as follows:

"Q. 1. Do you find that the plaintiff and the defendants made a settlement of the matters in controversy in this lawsuit? A. No.

"Q. 2. If you answer first question in the negative, however, then answer the following: Did Roy Herman make inquiry of the defendant Lawrence as to whether or not they claimed any lien upon the truck in controversy for the payment of the note of $160 or balance thereon, and if so, what informa-

tion was then given to said Herman by the defendants with reference thereto? Answer in full. A. Roy Herman did inquire as to lien, and Lawrence Motor Co. said there was no lien on truck."

The undisputed facts with reference to the $125 claim are that it was the balance unpaid of a small note given by the purchaser of the truck to the defendants at the time it was purchased from the defendants, the larger note being set out in full in the mortgage given at the same time by the purchaser, with no specific mention being made in the mortgage of the small note. The larger note was indorsed and the mortgage assigned by the defendants to a finance company. The mortgage had been recorded and at the time of the detention of the truck the larger note had been fully paid. The mortgage had been reassigned to the defendants but had not been released. The mortgage contained the following paragraph:

"In the event that this mortgage, or the note secured hereby, is transferred to the holder of any other debt against the mortgagor herein, or in the event the mortgagor herein shall become indebted to the mortgagee, assigns or legal representatives for any other sum, whether evidenced by a note or open account, then this instrument shall likewise secure the payment of all such indebtedness, subject to all amounts hereinbefore referred to."

The trial court instructed the jury that the mortgage did not secure the $125 balance of the small note, because it was given at the same time the mortgage was executed and was not specifically mentioned therein, but that the clause above quoted would secure such sums as might be thereafter advanced by the holder of the mortgage to the mortgagor. Of this and other instructions the appellants complain, and also allege error in the failure to set aside the answer of the jury to the first question. There was certainly no error in holding that a note given at the same time the mortgage was given, but not specifically mentioned therein, was not secured by the mortgage. The policy of the law with reference to the recording act is to thereby afford notice to the world as to the maximum amount of indebtedness against the property therein described. If a general clause of the kind and character found in this mortgage will afford a lien on the property for any and all private and secret obligations between the parties at the time of the execution of the mortgage, other creditors and subsequent purchasers would have no protection whatever.

"A mortgage securing a debt of a fixed amount cannot be extended so as to become a lien for another and different indebtedness not expressed." (Jones on Chattel Mortgages, 5th ed. § 91.)

"A chattel mortgage given to secure a certain indebtedness therein expressed cannot be extended to become a lien for another and different indebtedness, except perhaps by agreement between the parties, and such an agreement cannot be enforced to the detriment of creditors or junior encumbrances." (11 C. J. 497.)

But appellants have pleaded accord and satisfaction, claiming that the plaintiff, after examining the record and after full opportunity to thoroughly investigate the matter, made a complete settlement with the defendants when the item of interest was waived, and that he should be bound thereby even if the claim might not legally be a mortgage lien. The appellants insist in the same connection that the answer to the first question is contrary to the undisputed evidence, and that there was error in the instruction of the court where the jury was told that a settlement would be binding upon the plaintiff if each party at the time of the settlement acted in good faith and stood on an equal footing and had equal means of knowledge as to the condition of the settlement. Appellants insist that such instruction was erroneous and prejudicial, as there was no evidence of anything but good faith, and nothing to show an unequal footing. Good faith is like honest intent: it is a state of mind made known by acts and circumstances, and can be proved by such as well as by direct and positive evidence. (2 Words and Phrases, 2d series, p. 1126.) As to their standing on equal footing, that is a matter to be determined from all the testimony as to their relative knowledge and acquaintance with all the facts and circumstances connected with the transaction from its very beginning. The fact that the records are open for inspection and that ample time and opportunity were afforded for inquiry and investigation may or may not put one on equal footing with another who has been in direct contact with every step and a party to the transaction from its inception. Should not both parties to a settlement be on equal footing concerning the vital and important features involved therein? A settlement to be effective should be made with a full knowledge of the legal rights of each, and that is in effect what the jury was told. The answer of the jury to the first question took into consideration the instructions as to a settlement and evidently intended to express the conclusion that what all parties called a settlement was, under the evidence and the instructions, not made with full knowledge of the situation, and therefore was no settlement. A false representation for the purpose of making a collection and effecting a settlement is a mild species of fraud, and especially when made by one closely connected with the business transaction from

the beginning to one who was comparatively new and unacquainted with the details of the same, so that the instruction given as to impeaching and setting aside the accord and satisfaction was appropriate and proper.

"Where persons have voluntarily settled their existing differences by accord and satisfaction the courts will not reopen the controversy without a sufficient showing to invalidate the accord, such for instance as fraud, mistake, or duress." (1 C. J. 569.)

"Whether or not there was a *bona fide* dispute between the parties is ordinarily a question for the jury." (1 C. J. 583.)

Appellants complain that the jury wholly disregarded the only testimony on the question of defendants having advanced $95.40 to purchaser to apply on the large note covered by the mortgage, notwithstanding the instruction of the court that if such was done, it would constitute a lien under the mortgage. The court, however, left with the jury the question of whether or not this was an advancement. It might very easily have been simply a return to purchaser of that amount paid on the $125 balance. Besides, the instruction concluded with the statement that if defendants did make such advancement, they could not hold the truck for a greater sum than that advanced. They may have advanced the $95.40, but they held the truck for payment of $125.

Appellants object to the answer of the jury to the second question because there was no issue warranting the same, and also allege error in the giving of the instruction concerning the defendants being estopped to deny their statements to Herman that there was no lien on the truck for the $125 balance, because there was no estoppel pleaded. The defendants' answer itself contains sufficient allegations as to the transfer of title through Herman to the plaintiff and the amount of indebtedness on the truck to justify evidence along that line by Herman and others familiar with the facts. We do not have the evidence of Herman before us or the objections, if any, to its introduction, and therefore cannot tell whether it went beyond the pleadings or whether it involved a question of estoppel that must be pleaded. For these reasons we cannot conclude that there was error in referring to estoppel in the instructions.

We find no error in the instructions with reference to the measure of damages, nor in the amount of the verdict, since being reduced by the court.

The judgment is affirmed.