KAMAOLE RESORT TWENTY-ONE, a limited partnership, Plaintiff-Appellee, Cross Appellee and Defendant-Appellee, Cross Appellee, *v.* FICKE HAWAIIAN INVESTMENTS, INC., Defendant-Appellant, Cross Appellee; MALCOLM MEYER, et al., Defendants-Appellees, Cross Appellants

and

TRYCK, NYMAN & HAYES, INC., Claimant, *v.* C. BRUCE FICKE, individually and/or dba C. BRUCE FICKE & ASSOCIATES, et al., Defendants-Appellants, Cross Appellees; MALCOLM MEYER, et al., Defendants-Appellees, Cross Appellants

NO. 6115

FEBRUARY 26, 1979

RICHARDSON, C.J., OGATA, MENOR and KIDWELL, JJ.*

---

* Justice Kobayashi, who heard oral argument in this case, retired from the court on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

414

OPINION OF THE COURT BY KIDWELL, J.

These consolidated cases constitute a multi-party action to foreclose mortgages and mechanics liens. The matter is before us on appeals by both the first mortgagee and the mortgagor from a decree of foreclosure. The decree determined the amounts of the mortgagor's indebtedness to each of the mortgagees which were secured by the respective mortgages. The questions on appeal involve only these amounts, the propriety of the foreclosure of the mortgages not being in issue.

Appellee Kamaole Resort Twenty-One (KR21), a limited partnership, entered into an agreement of sale dated December 20, 1972, with C. Bruce Ficke and Guy F. Kasnick which provided for the sale to these individuals of a parcel of land on the island of Maui. The individuals assigned their rights under the agreement of sale to appellant Ficke Hawaiian Investments, Inc. (Ficke). Ficke mortgaged its interests in the property to the predecessor in interest of appellant Morprop Incorporated,[1] the first mortgagee, to secure a promissory note in the amount of $2,800,000. Ficke then completed the purchase of the property pursuant to the

---

[1] By stipulation of the parties, Morprop Incorporated was substituted for defendants-appellees, cross appellants Malcolm Meyer, et al., as trustees of Builders Investment Group; an unincorporated business trust.

agreement of sale, giving a second mortgage to KR21 to secure a promissory note in the amount of $1,250,000. The priority of these mortgages is not in issue.

Ficke became in default under the first mortgage by reason of nonpayment of interest due on January 1, 1974. The record does not disclose whether a formal notice of default was given to Ficke by the first mortgagee. Ficke became in default under the second mortgage by reason of nonpayment of interest due on Janury 20, 1974. On January 21, 1974, the second mortgagee gave notice to Ficke of the default and of the second mortgagee's election to declare the unpaid principal amount due and payable. The first mortgagee having given notice of intention to foreclose the first mortgage by exercise of its power of sale, the second mortgagee commenced this action to foreclose the second mortgage. By cross-claim, the first mortgagee sought foreclosure of the first mortgage in this action, which was subsequently consolidated with another action brought by mechanics lien claimants. No issues arising out of the mechanics lien action are before us.

On November 1, 1974, the circuit court entered a Decree of Foreclosure and Order of Sale, finding that Ficke was in default under both mortgages and that both mortgagees were entitled to foreclose their respective mortgages. Sale of the mortgaged property was ordered. The relative priorities of the liens and the amounts, including interest, secured thereby were not determined. On February 25, 1975 an Order of Sale and Directions to Commissioners was entered which directed that the property be sold on terms, with deferred payments secured by a purchase money mortgage. The questions of priorities and of the amounts secured were again reserved. An appeal from that order was taken to this court but was subsequently withdrawn and dismissed by stipulation. After further proceedings, a Supplemental Decree of Foreclosure was entered on October 28, 1975, from which the present appeal is taken. The record shows no stay of proceedings to enforce any judgment or order of the circuit court in this action. We are not advised whether further proceedings have been had.

I.

The first mortgagee raises two issues on appeal. First, it argues that the trial court erred in awarding interest at the statutory rate of 6% per annum under HRS § 478- 2 following entry of the decree of foreclosure dated November 1, 1974. It also contends that the trial court erred in awarding interest at the contracted "default rate" of 15% from January 2, 1974, when the mortgagor failed to pay interest due, until the November 1, 1974 decree of foreclosure.

The note secured by the first mortgage provided:

> If default be made in the payment of any installment under this Note, . . . the entire principal sum and accrued interest shall at once become due and payable without notice, at the óption of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The principal of the note and any part thereof, and accrued interest, if any, shall bear interest at the rate of fifteen percent (15%) per annum after default until paid.

The note provided for interest (contract interest) at a rate 6% above the prime rate of interest charged by First National City Bank of New York. During the period from the mortgagor's default in the payment of interest due on January 1, 1974, until the entry of the supplemental decree of foreclosure on October 28, 1975, the contract rate of interest on the note ranged from somewhat more than 13% to somewhat more than 18%. The supplemental decree contained "findings of fact and conclusions of law" to the effect, inter alia, that the unpaid principal amount of the indebtedness owed by the mortgagor to the first mortgagee and secured by the first mortgage was $2,800,000; that interest on said sum accrued at the contract rate of 6% over the prime rate from December 21, 1973 to January 1, 1974; that interest accrued on said sum at the default rate of 15% from January 2, 1974 to November 1, 1974; and that interest was and would be owed by the first mortgagee from November 2, 1974 until the "judgment is satisfied" at the statutory rate provided by HRS § 478-2 upon the aggregate of said sums or $3,168,355.56. This amount is

characterized in the decree as "judgment secured by lien."

A.

The interest rate for the period from the date of default until at least the date of the original decree of foreclosure depends solely upon the agreement between the parties. It is not contended that any rule of law invalidated provisions for a change in the interest rate after maturity, and we do not have that issue. The mortgagor has not disputed the contentions of the first mortgagee. The second mortgagee argues, in support of the decree, that the last sentence of the quoted provision uses the term "default" in the same sense as in the first sentence, where it refers to any nonpayment, with the result that mere nonpayment of interest due on January 1, 1974 made the default rate effective thereafter. The first mortgagee asserts that the context makes it apparent that the last sentence provides the rate at which interest is to be computed only after a default in the payment of the principal. Unless the holder of the note accelerated its maturity by exercise of the option given in the first sentence, upon nonpayment of the interest, it is argued that the default rate did not become applicable by reason of the default in payment of interest.

The principal of the note was payable in full, in a single payment, on May 9, 1974. Interest was payable monthly. Since no installment payments of principal were provided, it is apparent that the default referred to in the first quoted sentence was necessarily a default in the payment of interest. We think that the sense of the third quoted sentence is to be found by reading the sentence as dealing with the principal of the note, with "default" in this context being a default in the payment of principal. Had default interest exceeded contract interest for the period in question, a situation which was much more likely to have been in the contemplation of the parties when the note was made, on the record before us we would have felt compelled to resolve the ambiguity against the first mortgagee and to hold that the contract rate applied. *Arakawa v. Limco, Ltd.*, 60 Haw. 154, 587 P.2d 1216 (1978).

The language in dispute does not have a different meaning because unusual circumstances cause it to favor the mortgagee instead of the mortgagor.

There is no finding, or any suggestion in the record, that payment of principal was accelerated by exercise of the first mortgagee's option to declare the principal sum due upon the default in payment of interest. In the absence of such acceleration of the maturity of the note, it was error for the trial court to compute interest at the default rate of 15% for any period prior to May 9, 1974. After that date, however, payment of principal was in default under the terms of the note and the default rate of 15% was correctly applied by the trial court for the remainder of the period through November 1, 1974. Since the record does not sustain the application of the default rate before May 9, 1974, the award of interest for that period must be vacated. Upon remand, the trial court shall determine whether principal became due by reason of acceleration prior to May 9, 1974.

B.

The decree of foreclosure dated November 1, 1974 appears in the record only as an exhibit attached to an Order of Sale to Commissioners filed on that date, although it is signed by the trial judge and is referred to in the supplementary decree of foreclosure entered October 28, 1975. No question has been raised with respect to its entry and we need not consider its effectiveness in view of the conclusions we have reached. The November 1, 1974 decree contained findings of fact which, inter alia, determined that the mortgagor had executed and delivered to the first mortgagee a promissory note in the principal amount of $2,800,000 secured by the first mortgage, that the mortgagor had failed to pay certain amounts due under the note and that "the entire amount of the indebtedness due thereunder is now due and payable." The decree ordered that the property be sold by commissioners and reserved the question of "the exact amount (including interest) of the indebtedness secured by the liens held by the respective parties."

HRS § 478-2 provides:

*On judgment.* Interest at the rate of six per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit.

The first mortgagee concedes that the supplemental decree constitutes a judgment for the purposes of § 478-2, thus removing from our consideration the question of the interest rate applicable after October 28, 1975. We have for consideration in this part the question whether the trial court should have computed interest at the statutory rate from November 2, 1974 to October 28, 1975. It is argued that the original decree of November 1, 1974, was not a "judgment" within the meaning of § 478-2 because it did not determine the amount owing by the mortgagor to the first mortgagee.

HRS § 478-2 has been in effect in its present form, except for changes in the interest rate provided, since 1859. No decision considers the characteristics of a court order which constitute it a "judgment" within the meaning of the statute. For some purposes, of course, any decree or order which is final and appealable is defined as a "judgment". H.R.C.P. 54(a). However, it is obvious that a judgment which requires the performance of an act other than the payment of money or its equivalent could not provide a basis for the computation of interest and that statutory interest could not accrue on such a judgment pursuant to HRS § 478-2. Other states have construed similar statutes or constitutional provisions as applicable only to money judgments. In *Redke v. Silvertrust,* 490 P.2d 805 (Ca. 1971), a constitutional provision which awarded interest upon "judgment rendered in any court" was held inapplicable to a judgment which ordered the transfer of corporation stock. Also see *Ginn v. Penobscot Co.,* 342 A.2d 270 (Me. 1975); *Hoffman v. Love,* 523 S.W.2d 503 (Tex. Civ. App. 1975).

Other courts have held that statutes awarding interest on judgments are applicable only to judgments which may be enforced by a writ of execution. *Gayden v. Kirk,* 44 So. 2d 410 (Miss. 1950); *Estate of Lunga,* 360 So. 2d 109 (Fla. App. 1978). H.R.C.P. 69 provides that enforcement of "a judgment for

the payment of money" shall be by a writ of execution. To argue that a decree is not a money judgment because a writ of execution may not issue involves obvious circularity. However, the cases cited stand for the proposition that both statutory interest and the process of execution are remedies afforded for nonpayment of money judgments and that each is predicated upon an in personam liability for a determined amount.

In *Brown v. Walker*, 24 Haw. 285 (1918), it was said that an execution may issue upon a decree in a mortgage foreclosure action for a deficiency remaining after exhaustion of the security. While this remark was dictum in a case which involved the question of certainty of a decree of foreclosure, it is consistent with the view we take of the November 1, 1974 decree, which was not a decree for a deficiency. Payment of money was not ordered and no amount of money was found to be due from the defendant to the plaintiff. At the most, the decree set in motion a sequence of events which could be expected to result in a subsequent court order for the payment of money to the first mortgagee. However, so far as can be ascertained from the decree of November 1, 1974, the right of the first mortgagee to receive a money payment is adjudicated only to the extent of directing the sale of mortgaged property to create a fund for distribution pursuant to future court order. Whether or not a deficiency might ultimately result and a decree might be entered for the payment of the deficiency by the mortgagor was not ascertainable from that decree.

We conclude, therefore, that the decree of November 1, 1974 was not a money judgment to which HRS § 478-2 was applicable. The default rate of interest under the note continued in effect from the date of default in the payment of principal until entry of the supplemental decree of October 28, 1975, which terminated the period with which we are concerned in this appeal, as the issues have been framed by the parties. The award of statutory interest must be vacated. Upon remand, the trial court shall compute and award interest at the default rate of 15% from May 10, 1975 to October 28, 1975.

 

## II.

The mortgagor's appeal places in question the rate of interest used in computing interest under the note secured by the second mortgage for the period from January 22, 1974 to November 1, 1974 and also the inclusion in the principal amount secured by the second mortgage of interest which had accrued on the agreement of sale. These are independent issues and will be dealt with separately. The second mortgagee did not appeal and has not attempted to question the computations in the decree of October 28, 1975.

### A.

By its promissory note executed and delivered June 4, 1973, secured by the second mortgage, the mortgagor undertook to pay to the second mortgagee $1,250,000, in installments of $250,000 on each January 20 commencing January 20, 1975, and to pay interest on outstanding balances of principal at the rate of 7½% per year annually on each January 20 commencing January 20, 1974. The note also provided:

> In the event of any default in any payment of principal or interest above provided, the entire unpaid principal amount of this note shall, at the holder's option, then be due and payable, and thereafter interest shall accrue upon the entire unpaid principal amount of this note at the rate of one percent (1%) per month.

In the supplemental decree of October 28, 1975, the second mortgagee is awarded interest at the rate of 7½% from June 5, 1973 to January 21, 1974 and at the rate of 12% from January 22, 1974 to November 1, 1974.[2] The mortgagor con-

---

[2] The 12% rate is termed the "default rate" in the supplemental decree. The trial court did not expressly find as a fact that the mortgagor defaulted in the payment of the January 20, 1974 interest installment, but found in the decree of foreclosure of November 1, 1974, that the mortgagor had failed to pay to the second mortgagee "certain amounts due" under the note, and that the entire amount of the indebtedness due under the note was then due and payable. There is in evidence a letter from

tends that the increase in interest provided by the note after default is unenforceable as a penalty, since the default in payment of principal resulted from exercise of an option to accelerate maturity upon nonpayment of interest only.

In support of this contention the mortgagor refers us only to *Cloud v. Rivord,* 6 Wash. 555, 34 P. 136 (1893). We are aware of no other authority for an exception from the general rule that the parties may agree that a higher rate of interest will be payable after the maturity of an obligation, whether the obligation matures in ordinary course or by reason of acceleration for default in the payment of principal or interest, unless the provision for the interest increase is regarded as an agreement to exact a penalty in contravention of public policy. *See, e.g.,* 45 Am. Jr. 2d 61, Interest and Usury § 65. A provision for increase of interest after maturity, at least where the increased rate might lawfully have been charged prior to maturity, is generally upheld. *Ruskin v. Griffiths,* 269 F.2d 827 (2d Cir. 1959), *cert. denied,* 361 U.S. 947 (1960); *First Nat'l Bank v. Energy Equities, Inc.,* 569 P.2d 421 (N.M. Ct. App. 1977); *National Life Ins. Co. v. Hale,* 154 P. 536 (Okla. 1916). *Cf. Annot.*; Provision for Interest After Maturity At a Rate in Excess of Legal Rate as Usurious or Otherwise Illegal, 28 A.L.R.3d 449 (1969). We see no reason to disapprove on grounds of public policy a provision permitting the holder of a note to accelerate its maturity upon nonpayment of interest. *Cf., Grootemaat v. Bertrand,* 213 N.W. 294 (Wisc. 1927). No tenable reasons have been presented why increased interest after an accelerated maturity should be regarded differently from increased interest after the agreed maturity, or why acceleration upon nonpayment of an interest installment should be regarded differently from acceleration upon non-

---

the second mortgagee to the mortgagor, dated January 21, 1974, which reads:

> As of January 21, 1974 we have not yet received interest which was due under our agreement on January 20, 1974 and you are hereby given notice that you are in default under our agreement and the entire amount is now due and payable.

The briefs proceed on the assumption that the trial court found that this letter effectively rendered the principal indebtedness due and payable on January 21, 1974. We consider that this finding is adequately expressed, is supported by the evidence and governs the appeal.

payment of a principal installment. The negotiability of a note containing such a provision is expressly preserved by HRS § 490:3-106(1)(b). We need not consider the validity of a provision for an increase in the rate of interest following a default which does not accelerate the maturity of the obligation.

We conclude that the computation of interest on the note payable to KR21 for the period from January 22, 1974 to November 1, 1974 should be affirmed.

B.

The trial court included in the amount of the indebtedness secured by the second mortgage the sum of $20,944 in addition to the unpaid principal and interest under the secured note. This sum appears in a confusing manner in the computation set forth in the supplemental decree of October 28, 1975. Finding D-1 is to the effect that the unpaid principal balance of the debt owed by the mortgagor to the second mortgagee, secured by the second mortgage, was the sum of $1,250,000. Finding D-2 is to the effect that the unpaid accrued interest on such unpaid principal, as of August 31, 1975, consists of a list of items, which together with such unpaid principal constituted as of August 31, 1975 the "judgment secured by lien" in the sum of $1,436,322. Included in these items are the following:

(c) $19,161, as the remaining interest obligation under the prior agreement of sale, evidenced by the letter agreement dated July 21, 1973.

(d) $1,783, for the period from January 22, 1974 to November 1, 1974, at the default rate of 12% per year specified in the letter agreement dated July 21, 1973.

The second mortgage provided, in part:

That the Mortgagor, for and in consideration of the sum of . . . ($1,250,000.00) . . . and also in consideration of any and all other sums of money now owing by . . . the Mortgagor to the Mortgagee, does hereby grant, bargain, sell and convey unto the Mortgagee . . . the property described on Exhibit A . . . .

PROVIDED, HOWEVER, that if the Mortgagor shall well and truly pay unto the Mortgagee such sum of . . . ($1,250,000.00) . . . and if the Mortgagor shall well and truly pay unto the Mortgagee all of the principal amount, any interest thereon and any other liability in respect thereof, of any sum or sums of money now owing . . . by the Mortgagor to the Mortgagee, according to the terms thereof, the same being hereby secured, and the terms of which are incorporated herein by reference . . . this mortgage shall become null and void.

BUT UPON ANY DEFAULT in . . . any payment to be made by the Mortgagor under any debt hereby secured . . . the Mortgagee may foreclose this mortgage. . . .

If the method of foreclosure selected by the Mortgagee involves the sale of the property . . . then the Mortgagee shall deduct from the proceeds of such sale . . . the entire unpaid amount of any debt hereby secured, any interest thereon and any other liability in respect thereof . . . and, after such deductions, the Mortgagee shall pay over the remainder of such proceeds to the Mortgagor.

There is in evidence a letter from the second mortgagee to the mortgagor, dated July 21, 1973 and signed as accepted by the mortgagor on August 3, 1973, which reads in part as follows:

Accordingly, on June 5, 1973, the date of the mortgage closing, Ficke Hawaiian owed Kamaole Resort the amount of $19,161.40 for interest accrued under the agreement of sale.

It is agreed that Ficke Hawaiian shall pay Kamaole Resort such amount of accrued interest under the agreement of sale ($19,161.40) on January 20, 1974. (This payment shall be in addition to the accrued interest which is also due and payable on January 20, 1974, on the unpaid balance of the note ("NOTE") Ficke Hawaiian gave Kamaole Resort at the mortgage closing.) No further interest shall accrue upon the amount of $19,161.40, except that, in the event of any default, thereafter interest shall accrue upon such amount at the rate of one per cent

(1%) per month. Such amount of accrued interest under the agreement of sale ($19,161.40) shall be secured by the mortgage of the Kamaole property Ficke Hawaiian gave Kamaole Resort at the closing, and in the event of any default in the payment of such amount of accrued interest, the entire principal amount of the note shall, at the option of Kamaole Resort, then be due and payable.

This letter sets forth the understanding reached between Ficke Hawaiian and Kamaole Resort before the mortgage closing. Please confirm our understanding by noting your acceptance at the foot of this letter.

This letter, with its acceptance, clearly expresses the intent of the parties that the interest owed under the agreement of sale was to be secured by the mortgage, and fairly implies that interest thereon at the default rate was also to be so secured. The terms of the mortgage are sufficient to embrace this existing indebtedness. The supplemental decree implies a finding by the trial court to these effects. There is no dispute with respect to these facts. The mortgagor contends, however, that an agreement in a mortgage that it shall secure indebtedness other than that specifically referred to in the mortgage, commonly termed a "dragnet clause", will not be given effect as to an antecedent debt not specifically described in the mortgage. Decisions to this effect may be found in Arkansas, Oklahoma and Kansas. *First National Bank v. Rozelle*, 493 F.2d 1196 (10th Cir. 1974); *National Bank of Eastern Arkansas v. Blankenship*, 177 F. Supp. 667 (E.D. Ark. 1959), *aff'd sub nom, National Bank of Eastern Arkansas v. General Mills*, 283 F.2d 574 (8th Cir. 1960); *Hendrickson v. Farmers' Bank & Trust Co.*, 189 Ark. 423, 73 S.W.2d 725 (1934); *Sowder v. Lawrence*, 129 Kan. 135, 281 P. 921 (1929); *First National Bank v. Gillam*, 134 Okla. 237, 273 P. 261 (1927). We need not examine the rationale of these decisions, as the question is disposed of by prior rulings of this court.

In *Akamine & Sons v. American Security Bank*, 50 Haw. 304, 440 P.2d 262 (1968), the mortgagor sought to enjoin a sale by the mortgagee under a power of sale contained in a mortgage which also contained a dragnet clause. We held that

a mortgage to secure future advances is not contrary to public policy, noting the express statutory authorization contained in HRS § 506-1(b), which reads in relevant part:

A mortgage may secure the repayment of a past debt, a debt incurred at the time the mortgage is executed, or a debt incurred for advances which may be made by the mortgagee subsequent to the execution of the mortgage even though the mortgagee is under no contractual duty to make such advances.

The statutory authorization of mortgages securing past debts is expressed in § 506-1(b) in the same terms as that with respect to future advances. In *Akamine* we declared that the effect to be given a dragnet clause is to be determined under the following test:

Unless the prior or subsequent advance relates to the same transaction or series of transactions, the mortgage must specifically refer to it for the advance to be secured.

50 Haw. at 312, 440 P.2d at 268.

In *Akamine,* the mortgagee sought to extend the security of the mortgage to four items of indebtedness: the original loan of $250,000 to the mortgagor, specifically referred to in the mortgage; a subsequent loan of $105,000 to the mortgagor secured by an "additional charge mortgage" which provided that the loan was secured by the property described in the original mortgage; a subsequent loan of $190,000 to a third party guaranteed by the mortgagor and a subsequent loan of $40,000 to a third party and the mortgagor. Applying the test which we announced in *Akamine,* we held that the mortgage secured only the original loan of $250,000 and the subsequent loan of $105,000. No evidence that the loan of $105,000 related to the same transaction or series of transactions was referred to in the opinion, and it is apparent that the security of the original mortgage was extended to this loan by reason of the agreement of the parties expressed in the additional charge mortgage. The conclusions reached in *Akamine* were reaffirmed in *Hawaii Nat'l Bank v. Okino,* 51 Haw. 367, 461 P.2d 136 (1969).

It is thus clear that the rule which the mortgagor seeks to invoke has no validity in this jurisdiction, where the parties

have expressly agreed in a subsequent instrument that the security of a mortgage containing a dragnet clause extends to an antecedent debt specifically referred to in the subsequent instrument. In such a case the *Akamine* test is to be applied as though the mortgage embodies the subsequent instrument and contains the specific reference to the antecedent debt there expressed. The letter agreement between the mortgagor and the second mortgagee in the present case satisfies the *Akamine* test and renders it unnecessary to inquire whether the indebtedness under the agreement of sale may have arisen out of the same transaction or series of transactions as the indebtedness for the balance of the purchase price under the agreement of sale, specifically referred to in the mortgage. We conclude that the inclusion by the supplemental decree of these disputed items of indebtedness in the amount of the secured debt should be affirmed.

The supplemental decree is vacated with respect to the items of indebtedness specified in parts IA and IB of this opinion and is otherwise affirmed. The case is remanded for further proceedings consistent with this opinion.

*Roy L. Anderson (Davis, Witherwax, Playdon & Gerson* of counsel) for defendants-appellants, cross appellees, *Ficke, et al.*

*Wendell H. Marumoto* for defendant-appellee, cross appellant, Morprop Incorporated.

*William F. Crockett (Crockett & Crockett* of counsel) for plaintiff-appellee, cross appellee and defendant-appellee, cross appellee *Kamaole Resort Twenty-One.*