(640 P.2d 1274)
No. 52,962

FIRST NATIONAL BANK & TRUST COMPANY, *Appellee,* v. LOWELL L. LYGRISSE and JUDITH LYGRISSE, *et al., Appellants.*

 Opinion filed
February 11, 1982.

*Carl L. Wettig,* of Wichita, for appellant Judith Lygrisse.

*Michael G. Coash,* of Bond, Bond & Coash, of El Dorado, for appellee.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

MEYER, J.: This is a mortgage foreclosure case.

On January 30, 1976, Lowell and Judith Lygrisse executed in favor of First National Bank & Trust Company (appellee) a $47,000 promissory note and real estate mortgage describing their homestead in Butler County, Kansas. The mortgage contained a future advance clause stating:

"It is the intention and agreement of the parties that this mortgage also secures any future advancements made to mortgagors, or either or any of them, by mortgagee and all indebtedness in addition to the above amount which mortgagors, or either or any of them, may owe to mortgagee, however evidenced, whether by note, book account or otherwise, in amount not to exceed $400,000.00. This mortgage shall remain in full force and effect until all amounts due hereunder, including future advancements, are paid in full, with interest. Upon the maturing of the indebtedness for any cause, the total debt on such additional loans, if any, with interest, shall at the same time and for the same specified causes be considered matured, and shall be collectible out of the proceeds of sale through foreclosure or otherwise."

A preexisting debt to appellee was not specifically referred to in either the note or mortgage.

On April 12, 1976, the Lygrisses signed a note consolidating the following: notes owed appellee as participations from other banks in the amount of $141,061.72; notes still being participated in by other banks of $47,545.28; a direct note with appellee for the purchase of 43 shares of stock in the amount of $20,166.58; the mortgage note and interest of $47,890.43; and a new advance of $18,000.00, for a total note of $274,664.01. In the memorandum space designated "NOTE SECURED BY," the numbers of the various notes being renewed were listed, as well as "S/A 509 head of cattle, machinery & equip., Financial Stmt., R. E. Mtg. dtd. 1/30/76."

On October 15, 1976, interest due to date of $13,296.75 was added to the outstanding balance and the note renewed for $287,960.76. The note was subsequently renewed with no increase except for interest on May 10, 1977, for $295,000.00, and on November 15, 1977, for $309,000.00. Only Lowell Lygrisse's

signature appeared on the May and November notes. Lygrisse's copy of the November note did not list the real estate mortgage in the memorandum space; appellee's copy of the same note, on the other hand, does have a reference to said mortgage in that space.

Appellee later declared the November 15, 1977, note due and on February 1, 1979, filed a foreclosure action. Defendant Judith Lygrisse answered admitting indebtedness of $47,000.00 plus interest, but denying any other loans were advanced which were secured by the mortgage. During the pendency of the foreclosure, Judith Lygrisse was awarded the homestead (the real estate described in the $47,000.00 mortgage) pursuant to a divorce decree.

Following trial and consideration of trial briefs, on October 8, 1980, the trial court issued a memorandum opinion finding the mortgage secured the full amount remaining due and owing on the November 15, 1977, note in the amount of $206,413.91 plus interest accruing at $53.17 per diem.

A notice of appeal was filed by Judith Lygrisse (appellant) and also by the Small Business Administration. The Small Business Administration dismissed its appeal on March 24, 1981, leaving Judith Lygrisse as the only appellant herein.

At issue is whether the trial court erred in finding the mortgage secured amounts in excess of the original $47,000.00 loan plus interest.

The controlling case is *Emporia State Bank & Trust Co. v. Mounkes,* 214 Kan. 178, 519 P.2d 618 (1974). In that opinion, the court gave a comprehensive review of the treatment of future advance clauses by other states and established guidelines for their construction in Kansas. The court, in its examination of case law from other jurisdictions, stated as follows:

"Where the construction of a mortgage is brought in issue the primary question for determination is what was the intention of the parties. In arriving at a decision of the matter, all the circumstances attending the execution of the mortgage and the nature of the transaction are to be considered as well as the language of the instrument itself. (*Hendrickson v. Farmers Bk. & Trust Co.,* 189 Ark. 423, 433, 73 S.W.2d 725.) In the *Hendrickson* case the court stated that where a mortgage has been given to secure a debt specifically named, the security will not be extended to cover debts subsequently incurred unless they be of the same class and so related to the primary debt secured that the assent of the mortgagor will be inferred. The reason is that mortgages, by the use of general terms, ought never to be so extended as to secure debts which the debtor did not contemplate. The court then proceeded to quote the following passage from *American Bank & Trust Co. v. First National Bank of Paris,* 184 Ark. 689, 43 S.W.2d 248:

" '. . "Where one contracts in good faith with a debtor that the security given should include not only that specifically mentioned in the mortgage but other indebtedness, whether existing then or to be incurred in the future, it is not difficult to describe the nature and character thereof, so that both the debtor and third parties may be fully advised as to the extent of the mortgage.' " (pp. 433, 434.)

"The foregoing cases were later followed by *National Bank of Eastern Arkansas v. Blankenship,* 177 F. Supp. 667, 673, where the court spoke in this wise:

" 'The "other indebtedness" secured by a mortgage may be either antecedent or subsequent. Where it is antecedent, it must be identified in clear terms, and where it is subsequent, it must be of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred. (Citing cases.)'

To similar effect see *Belton v. Bank,* 186 N.C. 614, 616, 120 S.E. 220." 214 Kan. at 181-82.

The court then expressed its own concise rule, to govern the effect of dragnet clauses in Kansas, stating:

"In summary, we hold that in the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor." 214 Kan. at 184.

This rule first establishes a rebuttable presumption that the parties did not intend the transaction in question to be covered by the dragnet clause. In order to secure other debts under a mortgage, the mortgagee must rebut this presumption by proof that one or more of the exceptions noted applies to such other debts.

As we view it, the rule of *Mounkes* can be summarized as follows: In construing a mortgage, the primary issue involves determining the intention of the parties. Unless the evidence of intent is clear, a "dragnet clause" will not be held to secure "other indebtedness" except when the intent is inferred in certain specific circumstances. This presumption against securing of "other indebtedness" is grounded on the fact that dragnet clauses are not highly regarded in equity, and should be carefully scrutinized and strictly construed. Although *Mounkes* does not specifically define "future advances," it does classify "other indebtedness" as either antecedent or subsequent debts. Where a mortgage is given to secure a debt specifically named, the security will be extended as to antecedent debts only if the instrument so provides and identifies in clear terms those debts intended to be secured. Subsequent debts may be secured under a "dragnet clause" in

either of two ways: by specifically stating in the new note that it is secured by the prior mortgage; or by showing that the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, the mortgage. Applying this rule to the limited record before us, we will examine to see upon what basis the trial court could have reached its conclusion that the mortgage secured the entire $206,413.91 plus interest due and owing on the consolidated note of November 15, 1977.

The evidence to disclose the true intention of the parties is rather scarce. Glenn Dawson, executive vice president and cashier of appellee bank, testified in regard to the loan transactions. He did not testify as to the purpose of the $47,000.00 mortgage or of the dragnet clause; nor did he indicate that he personally participated in the transactions. Dawson merely professed knowledge of bank procedure, its records, and a general familiarity with the Lygrisse accounts. The testimony of Lowell Lygrisse, the only other witness at trial, is unavailable due to malfunction of the electronic recording equipment used at the trial. Because Judith Lygrisse did not testify, there is a complete absence of any real evidence of the parties' intentions at the execution of the documents. The note itself does not specify the purpose of the loan. The presumption against the inclusion of subsequent notes under the dragnet clause remains to be rebutted by one of the exceptions to the rule enunciated in *Mounkes.*

It is this court's opinion, and we hold, that the consolidation of several notes, one or more, but not all, of which are secured by a mortgage, will not by itself extend the security of the mortgage to cover the total debt thus consolidated. Other debts, whether preexisting or after-arising, will not become secured under the mortgage by the mere act of consolidating these several debts into a single note; only if one of the exceptions announced in *Mounkes* applies will the intention of the parties that the mortgage be extended to the entire amount of the consolidation note be inferred. With this in mind, we will now address the issue whether one or more of these exceptions to the rule apply in the case at bar.

The first exception to the rule applies to preexisting debts. This exception extends future advance, or dragnet, clauses to cover antecedent debts, if these are clearly identified in the mortgage. The mortgage and note dated January 30, 1976, were introduced

into the record. Nowhere in either the mortgage or the note is there any mention of any preexisting debt. It is clear that the antecedent debts were not secured by the mortgage when it was signed; at that time the amount of security was only $47,000.00.

The second and third exceptions to the rule apply to future advances. Most of the amount due on the November, 1977, note was owed on notes existing prior to January 30, 1976. We shall examine the record to see if it will support a conclusion that the antecedent debts became secured by the mortgage under either of these two exceptions.

The second exception allows coverage if the advances relate to the same transaction or series of transactions, or are of the same kind or character as the initial transaction.

The trial judge specifically found that:

"[T]he consolidation and subsequent renewals, including the additions of interest, constituted advances of the same kind and quality, and related to the same transaction or series of transactions as the principal obligation secured."

The only evidence we find in the record which is relevant to this issue came from the appellee's employee, Mr. Dawson. He testified that the bank maintained *three separate liability ledgers* for the Lygrisses. One ledger was used for operating expense loans for Butler County Implement, Inc. Another ledger was for personal loans to Lowell Lygrisse. This second ledger contained all the notes relating to Lygrisse's cattle and farming operations, all of these notes being the same ones which were later consolidated with the real estate mortgage note. The third ledger contained only the real estate mortgage note.

As we view it, the only inference which can reasonably be drawn from this evidence is that the mortgage note was for a different purpose than those notes in the "personal loans to Lowell Lygrisse" ledger, with which it was later consolidated. Being for a different purpose, the mortgage could not possibly be of the same kind or quality as, nor part of the same transaction or series of transactions with, the other note. The trial court's finding noted above is not supported by any evidence in the record; we must reverse it.

The third exception will construe a subsequent note to be a future advance secured by the mortgage only if the document evidencing the advance refers to the mortgage. The original

mortgage note was directly made a part of the mortgage, which was recorded; that note reads, in its entirety, as follows:

EL DORADO, KANSAS, January 30 63 76 Nº267

ONE HUNDRED EIGHTY DAYS AFTER DATE, FOR VALUE RECEIVED I PROMISE TO PAY TO THE ORDER OF

FIRST NATIONAL BANK & TRUST COMPANY $

THE SUM OF FORTY SEVEN THOUSAND AND NO/100---------------------DOLLARS 47,000.00

at First National Bank & Trust Company, El Dorado, Kansas,

with interest from date at the rate of 9½ per cent per annum until paid. The makers, sureties, endorsers and guarantors of this note severally waive presentment for payment, notice of non-payment, protest and notice of protest, and agree to any and all extensions and partial payments at or after maturity without prejudice to the holder hereof. If default is made in payment when due, then all the remaining balance shall become due and payable at once, and bear interest at the rate of ten per cent per annum until paid. DUE 7/28/76

NOTE SECURED BY R.E. Mtg. dtd. 1/30/76

P. O. R R #1, Benton, Kansas

The original mortgage and note, thus, have a clear connection between them, by the notation on the face of the note, "R.E. Mtg. dtd. 1/30/76," the amounts, the note's inclusion in the body of the mortgage and by their contemporaneous execution.

In the body of the subsequent notes, however, reference is made only to a security agreement bearing the same date as the note. The security agreement referred to only lists personalty. The notation "R. E. Mtg. dtd. 1/30/76" appears only in a memorandum space entitled "NOTE SECURED BY." A list of notes renewed and a summarization of the collateral listed in the security agreement appear on all the notes. The November 1977 note, as originally executed and microfilmed, does not even mention or list the mortgage at all.

On the one hand, appellee argues that the notations in the memorandum space clearly identify the security backing the note; on the other hand, appellee admits that such notations are used only for internal bank purposes. Appellee cannot have it both ways. Appellee also insists that it is inconsequential that the November note, as originally signed by appellant Lowell Lygrisse, contained no notation referring to the real estate mortgage. The copy filed by appellee in this action does, however, contain the notation "R. E. Mtg. dtd. 1/30/76" in the memorandum space. Appellee explained that the fact the notation was not originally made was due to inadvertence or mistake, and that the later addition of such notation to its copy of the note was done in good faith. We cannot accept this explanation as sufficient; it appears to us that appellee materially altered its copy of the note after it was signed by Lowell Lygrisse.

Even accepting that the failure to note the mortgage in the memorandum space of the November note was due only to appellee's excusable neglect, we are still of the opinion that appellee's argument here must fail. The mortgage is not specifically mentioned in the body of any of the consolidation notes; certain security agreements concerning personalty are mentioned in the body of each note. We deem it important that the only references to the mortgage or any of the consolidation notes appear in the aforementioned memorandum space. In fact, the November note, as originally executed, contained no reference to the mortgage, either in the body or the memorandum space. By appellee's own admission, the memorandum space is used by the bank only for its own internal purposes. Also, as the November note clearly illustrates, it is quite possible for the lender to make material changes in this space after the borrower has signed the agreement.

We pay particular attention to the *Mounkes* opinion, where the court admonished:

"Despite recognition by both judicial and legislative bodies that the dragnet mortgage fills a contemporary need in the complex world of business, it is not a favorite of the law and is subject to interpretation and construction. As the Iowa Supreme Court so aptly observed in *First v. Byrne,* 238 Iowa 712, 28 N.W.2d 509, 172 A.L.R. 1072, ' "Dragnet" clauses are not highly regarded in equity. They should be "carefully scrutinized and strictly construed." ' (pp. 715, 716.)" 214 Kan. 180-181.

The rigorous scrutiny mandated by *Mounkes* would seem to find the notations lacking in clarity. We hold that the notation of "R. E. Mtg. dtd. 1/30/76" made by appellee in the memorandum space of the consolidation notes was not sufficient to subject that mortgage to the full amount of the consolidation note. As a matter of law, such a notation does not adequately refer to the mortgage as securing the entire amount on that note. Such a notation, standing alone, cannot be said to be a clear and specific indication that it was the intention of the parties to expand the mortgage to secure the entire balance of the note; this is particularly true where, as here, the notations in the memorandum space refer also to several other security agreements covering personalty as being security for the consolidated debt. It appears to us that the notation could just as reasonably be considered a reference to the fact that there was a mortgage securing a portion of the total

balance, to-wit, $47,000.00, and that the other items listed secured the remainder of the debt.

In reaching our conclusion, we are not unmindful of the worries expressed by appellee in its brief, wherein it stated: "A decision in favor of [appellant] could very well have far-reaching effect upon the way banking practices are carried on in the state of Kansas." We do not agree with appellee's argument that our ruling will require a bank to take a new mortgage each time new funds are advanced or existing notes are consolidated. There are other means of invoking the dragnet clause, among them a specific reference to the mortgage in the new note, clearly indicating that the mortgage is intended to secure the entire amount due on the new note. We do not now undertake to map the boundaries of what references are sufficiently clear indications of intent and what are not; these parameters will have to be determined on a case-by-case basis. We will state here, by way of dictum, that a clause in the body of the November note, clearly and expressly subjecting the prior mortgage to the entire balance of said note, would have been sufficient to support the judgment which we now reverse. In light of the abuses which a dragnet clause can subject a debtor to, we do not feel that the burden we today place on their enforcement by lending institutions is an onerous one.

To summarize our analysis of these transactions under the guidelines of *Mounkes,* it would seem there is no clear, supportive evidence of an intention by the parties to subject the mortgage to the particular subsequent notes. The evidence relating to the purpose of the mortgage will not support a finding that the transactions are of the same kind or character as, or part of the same transaction with, the mortgage. The mortgage itself makes no mention of the notes existing at the time of its execution or interest thereon. Finally, the notations made on the subsequent notes, admittedly referring to the mortgage, were legally insufficient to constitute a clear indication that the parties intended to subject the mortgage to the full amount due on those subsequent notes. For these reasons, the conclusion of the trial court that the mortgage secured sums in addition to the $47,000.00 plus interest due on the original mortgage note was error. The trial court's decision must therefore be reversed, and the case remanded to the trial court with directions to enter a judgment for appellee bank, finding that appellee had a first and prior mortgage lien, dated

January 30, 1976, against the subject real estate, but only in the amount of $47,000.00 plus interest on that amount.

Reversed and remanded with directions to enter judgment in accord with this opinion.