No. 52,962

First National Bank & Trust Company, *Appellee*, v. Lowell L. Lygrisse and Judith Lygrisse, *et al, Appellants.*

(647 P.2d 1268)

Opinion filed July 16, 1982.

*Carl L. Wettig,* of Wichita, argued the cause and was on the brief for appellant Judith Lygrisse.

*Anne L. Baker,* of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *Michael G. Coash,* of Bond, Bond & Coash, of El Dorado, was on the brief for appellee.

*Anne L. Baker* and *Charles N. Henson,* of Eidson, Lewis, Porter & Haynes, of Topeka, were on the brief for *amicus curiae* Kansas Bankers Association.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by Judith Lygrisse, one of the defendants in a real estate mortgage foreclosure action commenced by the plaintiff, First National Bank & Trust Company of El Dorado, Kansas. The mortgage upon which the action is brought covered a loan of $47,000. It contains a "dragnet" or "future advances" clause. The trial judge held that the mortgage secured a debt of some $206,000 plus interest. The Court of Appeals reversed, finding that only $47,000 plus interest was secured by the mortgage. *First Nat'l Bank & Trust Co. v. Lygrisse,* 7 Kan. App. 2d 291, 640 P.2d 1274 (1982). On April 14, 1982, we granted review.

The sole issue raised by the appellant in her brief is whether "future advances" were made by the bank to the mortgagors, Lowell and Judith Lygrisse, and whether the "future advances" are secured by the real estate mortgage.

On January 30, 1976, Lowell Lygrisse and Judith Lygrisse, husband and wife, executed a note and mortgage to the bank. The note was for $47,000; the mortgage covered a quarter section of land in Sedgwick County which was the homestead of the mortgagors. In the lower left hand corner of the note appears the following reference to the mortgage:

"NOTE SECURED BY R. E. Mtg. dtd. 1/30/76."

The mortgage contains the following paragraph which gives rise to this dispute:

"It is the intention and agreement of the parties that this mortgage also secures any future advancements made to mortgagors, or either or any of them, by mortgagee and all indebtedness in addition to the above amount which mortgagors, or either or any of them, may owe to mortgagee, however evidenced, whether by note, book account or otherwise, in amount not to exceed $400,000.00. This mortgage shall remain in full force and effect until all amounts due hereunder, including future advancements, are paid in full, with interest. Upon the

maturing of the indebtedness for any cause, the total debt on such additional loans, if any, with interest, shall at the same time and for the same specified causes be considered matured, and shall be collectible out of the proceeds of sale through foreclosure or otherwise."

The figure "$400,000.00" was typed into the printed mortgage form.

A few weeks later, on April 12, 1976, Mr. and Mrs. Lygrisse executed another note to the bank in the amount of $274,664.01. This note consolidated various obligations of the Lygrisses to other banks, the original $47,000 debt, other obligations of the Lygrisses to the plaintiff bank, accrued interest, and a new advance of $18,000. In the lower left hand corner of the note appears:

"NOTE SECURED BY S/A 509 head of cattle, machinery & equip., Financial Stmt., R. E. Mtg. dtd. 1/30/76."

On October 15, 1976, both Mr. and Mrs. Lygrisse signed a renewal note in the amount of $287,960.76. It recited the same notation referring to the mortgage.

Subsequently, two renewal notes were signed by Lowell Lygrisse only. Interest on the principal sum was the only amount added. On May 10, 1977, Lowell Lygrisse signed the first of the two renewal notes in the amount of $295,000; a notation referring to the mortgage appeared thereon. On November 15, 1977, Lowell Lygrisse signed the final renewal note, in the amount of $309,000. Reference to the mortgage was omitted.

The trial judge made the following findings:

"The question is whether the subsequent consolidation of the $47,000.00 indebtedness, secured by the mortgage, with other notes of indebtedness antecedent to the execution of the mortgage; and subsequent renewals of this consolidated indebtedness with the addition of interest charges fall within the scope of the above ['dragnet' or 'future advances'] clause.

"The law as stated in *Emporia State Bank & Trust Company v. Mounkes*, 214 Kan. 178, provides as follows: 'Dragnet clauses are not, however, highly regarded in equity and should be carefully scrutinized and strictly construed.'

'Where a mortgage is given to secure a debt specifically named, the security will not ordinarily be extended to cover debts subsequently incurred unless they be of the same class or character and so related to the primary debt secured that the assent of the mortgagor can be inferred.'

'In the absence of clear evidence of a contrary intention, a mortgage containing a dragnet type provision will not be extended to cover subsequent advances or loans unless they be of the same kind and quality or relate to the same transaction or

series of transactions or unless the document evidencing the same refers to the mortgage as providing security therefor.'

"Based upon the facts of this case and law as stated, I find as follows:

"1. That the note dated April 12, 1976, not only consolidated numerous notes and accurred [sic] interest, but also included a further advance of $18,000.00 to 'pay interest, purchase feed and fertilizer, and gas, and  .  .  .  and general operating expenses.'

"2. That the note dated April 12, 1976, consolidated not only numerous notes, but consolidated the collateral securing those notes including the mortgage dated January 30, 1976.

"3. That the note dated April 12, 1976, specifically refers to the mortgage dated January 30, 1976, as part of the security therefor.

"4. That all the notes consolidated on April 12, 1976, were related to the farming and cattle operations of the Defendants Lygrisse as opposed to the business of Butler County Implement, Inc.

"5. That the consolidation and subsequent renewals, including the additions of interest, constituted advances of the same kind and quality, and related to the same transaction or series of transactions as the principal obligation secured.

"6. That there was no evidence presented of any intention by the parties to exclude the mortgage from the other collateral listed on the November 15, 1977, note; and conclude that it wasn't included due to error or inadvertence.

"For the above reasons, I find that the indebtedness evidenced by the November 15, 1977, note is secured by the mortgage dated January 30, 1976; and Plaintiff should be given judgment in the amount due and owing on said note; and that the security represented by the mortgage dated January 30, 1976, constitutes the first and prior lien upon the real estate subject only to the two mortgages of Eureka Federal Savings & Loan Association which has hereinbefore been stipulated to by the parties, and to the property taxes due and owing to Sedgwick County, Kansas, as also stipulated to by the parties herein."

The trial court found that the total principal and interest owing on the November 15, 1977, note was $206,413.91. That amount was held to be secured by the mortgage. The trial court found that certain other loans from the Bank to the Lygrisses were not secured by the mortgage; no appeal has been taken from that portion of the court's order, and we are not concerned with it here.

Mr. and Mrs. Lygrisse were divorced during the pendency of the foreclosure proceedings, and the homestead (the mortgaged property) was awarded to Mrs. Lygrisse. She appeals from the judgment of foreclosure.

The Court of Appeals noted that the controlling case is *Emporia State Bank & Trust Co. v. Mounkes,* 214 Kan. 178, 519 P.2d 618 (1974). It quoted various portions of that opinion, including the following:

"In summary, we hold that in the absence of clear, supportive evidence of a

contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor." 214 Kan. at 184.

The Court of Appeals then held:

1. That the primary issue involves a determination of the intention of the parties.

2. That the quoted portion of the *Mounkes* opinion establishes *a rebuttable presumption* that the parties did not intend the transaction in question to be covered by the dragnet clause.

3. That antecedent debts may be secured by a mortgage containing a dragnet or other advances clause only if the antecedent debts are clearly identified in the mortgage.

4. That part of the debts refinanced and thus represented by the April 12, 1976, and later notes, were antecedent debts; these antecedent debts were not specifically mentioned in the mortgage and thus were not secured by it.

5. That subsequent debts may be secured under a dragnet clause in either of two ways:

   a.  by specifically stating in the new note that it is secured by the prior mortgage; or

   b.  by showing that the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, the mortgage.

6. That the evidence does not support a finding that the parties intended the subsequent notes to be secured by the mortgage.

7. That the evidence is insufficient to support the trial judge's finding that subsequent notes covered advances of the same kind and quality, and related to the same transaction or series of transactions as the principal obligation secured.

8. That the statement on the face of the notes, "NOTE SECURED BY R. E. Mtg. dtd. 1/30/76," was not a sufficient reference to the mortgage to subject the mortgage to the full amount of the subsequent notes.

We agree with the substance of the Court of Appeals holdings capsulized in paragraphs 1, 3 and 5 above; we disagree with its other enumerated holdings and with its somewhat narrow interpretation of *Mounkes.* In that case, it must be remembered, the court was faced with a claim by the bank that a subsequent note which made no reference to the mortgage fell within the terms of

the dragnet clause and was thus secured. The note indicated in plain terms that it was a "signature" loan, normally meaning that the loan was unsecured. The court was thus required to go far beyond the reaches of the written documents to determine what the parties intended. With this in mind, we will examine the issues raised here.

We should first point out that mortgages given to secure future advances have long been held to be valid and enforceable in Kansas. See *Potwin State Bank v. Ward,* 183 Kan. 475, 491, 327 P.2d 1091 (1958), 80 A.L.R.2d 166, and cases cited therein.

Promissory notes and mortgages are contracts between the parties, and the rules of construction applicable to contracts apply to them.

In Simpson on the Law of Contracts (2d ed. 1965), p. 210, it is said:

"The cardinal or fundamental rule of interpretation of contracts, to which all others are subordinate, is that a contract [should] receive that interpretation which will best effectuate the intention of the parties. . . . [I]t is the intention that is expressed in the contract that controls, not an intention secretly cherished by one of the parties. . . .

"Where the intention clearly appears from the words used, there is no need to go further, for in such cases the words must govern; or, as it is sometimes said, where there is no doubt, there is no need for interpretation."

The rule is expressed in 17A C.J.S., Contracts § 296(1), in these words:

"The intention, or purpose, of the parties to a contract is to be ascertained and determined primarily, or largely, or if possible, from its terms, expressions, or provisions, and from the words, or language, employed by them . . . . This has been called the fundamental or primary rule in the construction of contracts, the sole duty of the court being to ascertain what was meant by the language of the instrument. The parties' intention must be derived from the language of the contract in the first instance."

In 17 Am. Jur. 2d, Contracts § 245, it is stated:

"If the language used by the parties is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone, no matter what the actual or secret intentions of the parties may have been. Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of their language referable to it, and such meaning cannot be perverted or destroyed by the courts through construction. . . . [T]he court must look to the agreement as a whole, to its nature, purpose, and the subject matter with which it deals . . . ."

In *Martin v. Edwards*, 219 Kan. 466, 473, 548 P.2d 779 (1976), we stated the rule simply and clearly:

"The intention of the parties and the meaning of the contract are to be deduced from the instrument where its terms are plain and unambiguous."

The rule has been followed in many cases. See *Duffin v. Patrick*, 212 Kan. 772, 778, 512 P.2d 442 (1973), and cases cited therein.

The consolidation note signed by Mr. and Mrs. Lygrisse on April 12, 1976, as the trial court found, "specifically refers to the mortgage dated January 30, 1976, as part of the security therefor." The note recites: "NOTE SECURED BY . . . R. E. Mtg. dtd. 1/30/76." It is not disputed that this recital was on the face of the note when it was executed. This language clearly "refers to the mortgage" as providing "security therefor," and expresses the intention of the parties that the debt represented by that note was secured by the mortgage. Since the expressed intent of the parties is specifically stated in writing on the note, the courts need look no further to determine the intention of the parties. We think it of no moment whether the reference to the mortgage be contained within the body of the note or by written endorsement at the beginning, in the middle, or at the end thereof; such reference is sufficient evidence of intent where, as here, it is clearly set forth upon the document at the time of execution.

Does the *Mounkes* opinion establish "a rebuttable presumption that the parties did not intend the transaction in question to be covered by the dragnet clause"? We think not. *Mounkes* holds that when there is no clear, supportive evidence that the parties intended a particular transaction to be secured under a future advances clause, courts will not find the transactions to be secured unless (1) the advances are the same kind and quality, or (2) unless the subsequent document refers to the mortgage as providing security for the later advance. Stated conversely, courts may find subsequent transactions to be secured under a dragnet or future advances clause where the later document refers to the mortgage as providing security, or where the later advances are of the same kind and quality or relate to the same transaction or series of transactions as the original obligation secured. In the absence of both of the foregoing, clear, supportive evidence of an intention to secure the later transaction is necessary. We see this rule as giving rise to no presumptions of fact. Clearly, where, as here, the subsequent document states on its face *that it is secured by the mortgage,* there can be no presumption that it is not.

Does the note of April 12, 1976, represent a "future advance" or is it an "antecedent debt"? In view of the fact that this note makes specific reference to the mortgage as providing security therefor, this point, though the only one raised by appellant, is perhaps academic. The rule against extending a mortgage containing a dragnet clause to secure antecedent debts, absent reference thereto in the mortgage, has no application where subsequent notes specifically indicate that certain antecedent debts were intended to be secured. See *Kamaole Resort Twenty-one v. Ficke Hawaiian Inv., Inc.,* 60 Hawaii 413, 426-27, 591 P.2d 104 (1979).

Here the Bank on April 12, 1976, loaned the Lygrisses money to pay existing notes and interest to other banks; it loaned them "new money" in the amount of $18,000; and it consolidated the $47,000 note of January 30, 1976, and one or more other notes of the Lygrisses that it held. All of the notes thus consolidated were paid, and a single new obligation, specifically secured by the real estate mortgage, was created. This was not an antecedent debt, but a future advance.

We turn next to the conclusions of the Court of Appeals that certain findings of the trial court were not supported by the evidence. Certain long-standing rules of appellate review are applicable:

1. The rule of this jurisdiction is that a presumption of validity attaches to a judgment of the district court until the contrary is shown and that before this court will set aside a judgment it must be affirmatively made to appear that such judgment is erroneous. *Klepper v. Stover,* 193 Kan. 219, 220-21, 392 P.2d 957 (1964); *McClelland v. Barrett,* 193 Kan. 203, Syl. ¶ 3, 392 P.2d 951 (1964).

2. The burden is upon an appellant to designate a record sufficient to present its points to this court, and to establish the claimed error. *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, Syl. ¶ 8, 567 P.2d 1359 (1977).

3. On appeal, error below is never presumed and the burden is on the appellant to make it affirmatively appear. *Kohn v. Babb,* 204 Kan. 245, 248, 461 P.2d 775 (1969); *Gladney v. Sheriff of Leavenworth County,* 3 Kan. App. 2d 568, 598 P.2d 559 (1979).

4. It is incumbent upon the appellant to include in the record on appeal any matter upon which he wishes to base a claim of error. *Frevele v. McAloon,* 222 Kan. 295, 299, 564 P.2d 508

(1977); *Gladney v. Sheriff of Leavenworth County,* 3 Kan. App. 2d 568.

5. Where an appellant has failed to procure an official transcript or abstract the testimony of record or reconstruct it in some accepted manner, this court will not review any action of the trial court requiring an examination of the evidence. *Osborne v. Fakes,* 178 Kan. 373, 376, 286 P.2d 156 (1955).

The case now before us was tried to the court without a jury. The testimony was electronically recorded. Due to malfunction of the equipment, the testimony of one of the principal witnesses, Lowell Lygrisse, was not preserved. His testimony is not included within the official transcript. Appellant made no effort to reconstruct the testimony, as may be done under our Rule 3.04 (228 Kan. xli). Under the circumstances, and following the rules discussed above, it is impossible for an appellate court to review the evidence and determine whether it is sufficient to support the findings made by the trial judge.

In conclusion, we note that the best and most persuasive evidence of the intention of parties who enter into a written agreement is that which is expressed by the terms of that agreement. In all of the notes before us, with the exception of the last one, the parties declared the notes to be secured by the mortgage of January 30, 1976. The trial court specifically found that the final note omitted reference to the mortgage not because of any intention to exclude the mortgage from the listed collateral, but because of error or inadvertence. We find no error in the findings and conclusions of the trial court.

The judgment of the Court of Appeals is reversed; the judgment of the District Court of Butler County is affirmed.