No. 45,038

STOCKYARDS NATIONAL BANK, *Appellant,* v. CAPITOL STEEL AND IRON COMPANY, a corporation, *Appellee;* KANSAS STEEL CORPORATION, et al., Defendants.

(441 P. 2d 801)

Opinion filed June 8, 1968.

*Earl M. Clarkson, Jr.,* of Wichita, argued the cause, and *Wilmer E. Goering,* and *Michael J. Silver,* both of Wichita, were with him on the brief for the appellant.

*Edward H. Graham,* of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Ralph M. Hope, Ronald M. Gott, Glenn D. Young, Jr.,* and *Jerry D. Bogle,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a dispute between first and second mortgagees over part of the sale proceeds of real estate sold under mortgage foreclosure.

The action arose out of indebtedness incurred by the Kansas Steel Corporation and was commenced January 31, 1966, by the filing of a petition against it by the appellant Stockyards National Bank. Others claiming liens against the property of Kansas Steel, including appellee Capitol Steel and Iron Company, were named as defendants.

In its petition appellant stated three separate causes of action. The first cause of action (with which we are not concerned) was to foreclose three chattel mortgages on certain machinery and an automobile. The second cause of action was for judgment on eight promissory notes executed by Kansas Steel and to obtain judicial sale of certain steel covered by a series of warehouse receipts given to secure the eight notes. The notes, in varying amounts totaling $97,687.81, were made during the period from July 26, 1965, to December 3, 1965.

The third cause of action was for foreclosure of two mortgages on Sedgwick county real estate. Here appellant alleged (*a*) that on September 9, 1963, Kansas Steel had executed its promissory note in the principal sum of $32,000 payment of which was secured by its mortgage on real estate known as the North tract, and there was due an unpaid balance of $18,447.93, and further (*b*) that on December 30, 1964, Kansas Steel had executed its promissory note in the principal sum of $16,000, payment of which was secured by mortgage on real estate known as the South tract (adjacent to the North tract), and there was due an unpaid balance of $12,413.37. Appellant prayed for a total judgment in this cause of action of $30,861.30 plus interest, and for foreclosure of the two mortgages. Both of these mortgages had been promptly recorded.

In due time appellee Capitol Steel filed its answer and cross-petition, alleging in the latter that Kansas Steel, being indebted to it for merchandise in the sum of $86,137.70, had on January 19, 1966, given its mortgage to appellee to secure said indebtedness, such mortgage also being on the same North and South tracts. It prayed for foreclosure of its lien for the amount of the indebtedness. This mortgage, which recited it was subject to appellant's prior first mortgage, was duly recorded January 21, 1966.

Eventually judgment was entered against Kansas Steel as prayed for in both petitions, the property was sold and priority of the various liens was adjudicated as hereinafter stated.

On its first two causes of action appellant recovered judgment against Kansas Steel for $104,021.07 plus interest. The net proceeds of the sale of the secured personal property after payment of sale expense amounted to $89,114.06, which was ordered paid to appellant to apply on its judgment. This order is not in dispute.

On the third cause of action appellant was awarded judgment against the North tract for $18,586.17 plus interest, and judgment against the South tract for $12,506.56 plus interest, and each mortgage was decreed to be a first and prior lien on each respective tract. Appellee was given judgment for $86,137.70 plus interest, and its lien on both tracts was decreed to be inferior only to appellant's first mortgage lien (and a mechanic's lien not here in issue). The trial court also found that the giving of the mortgage by Kansas Steel to appellee was a bona fide transaction, which finding has never been questioned.

At sheriff's foreclosure sale the North tract sold for $45,000 and

the South tract for $20,000. Distribution of the sale proceeds was ordered according to the priorities already stated, that is, after payment of costs and taxes, on the North tract $18,586.17 plus interest to appellant and the balance of the $45,000 (after payment of mechanic's lien) to appellee; on the South tract $12,506.56 plus interest to appellant and the balance of the $20,000 to appellee.

Upon appeal, appellant asserts error in the distribution of the mortgage foreclosure proceeds. It contends it should have been allowed the face amount of its original mortgages, that is $32,000 from the sale proceeds of the North tract and $16,000 from the South tract, instead of the amounts allowed.

First of all appellee contends appellant has no pleading on file to support its present contention. It is true appellant recovered judgment exactly as prayed for, that is, for the amount of the unpaid balances of the two notes secured by the real estate mortgages. Appellant's position at trial is not entirely clear. So far as we are able to determine from the record on appeal, the first mention there for greater security coverage came after judgment, in appellant's motion for new trial and to alter or amend the judgment, in which it stated:

". . . by virtue of the notes given in connection with the balance of Plaintiff's judgment in the total amount of $139,146.61 plus interest and the language of said notes and the contractual nature thereof, the Court should have ruled that the Plaintiff had a first and prior lien in the amount of $32,000.00 plus interest on the 'North Tract' and the sum of $16,000.00 plus interest on the 'South Tract'."

Appellant's first item in its statement of points upon appeal is:

"It was error to limit the priority of a first mortgage over a second mortgage to the balance owed under the original note given in connection with the first mortgage when other notes were given which were also secured by the first mortgage and all of which notes were given prior to the date of the second mortgage."

In appellant's brief we find only the following statement in support of this theory:

"The mortgages of appellant were not only security in connection with the original notes, but by reason of the language contained in the subsequent notes on which appellant bases its claim, was also security for the subsequent notes."

Upon oral argument appellant points out that the language relied on by it to sustain its contention is a phrase contained in each of the eight promissory notes which were secured by warehouse

receipts. In an exemplar of those notes we italicize the language relied on:

Wichita, Kansas, August 3, 1965

"February 3, 1966 after date, for value received, the undersigned, jointly and severally, promise to pay to the

"Order of STOCKYARDS NATIONAL BANK, Wichita, Kansas (hereinafter called the Bank), at its Banking Office in Wichita, Kansas,

- - - Sixteen Thousand Seven Hundred and No/100 - - - Dollars, with interest from date at the rate of six per cent per annum, and with interest from maturity at the rate of 10 per cent per annum, *having deposited with the Bank as collateral security for the payment of this note, or any note given in extension or renewal hereof, as well as for the payment of all other obligations or liabilities, direct or contingent, of the undersigned, or any of them, to the Bank, due or to become due, whether now existing or hereafter arising or acquired by the Bank, the following property, viz:*

"This loan is secured by Warehouse receipt No. C19517 of St. Louis Terminal Field Warehouse Co. of St. Louis, Missouri, Kansas Steel Company in the amount of $23,824.81."

Assuming that the issue was raised prior to judgment and is properly before us, we find nothing in the language relied upon in the eight promissory notes which refers or relates in any way to the real estate or creates any lien upon it or makes it liable for any indebtedness created by virtue of the notes. The only collateral security referred to in these unrecorded notes, and sought to be bound is the personalty mentioned therein—the warehouse receipts. It is elemental that, absent agreement of the parties, a mortgage given to secure a particular debt cannot be enforced as security for another or different debt (59 C. J. S., Mortgages, § 178a).

Much of appellant's brief is devoted to the law governing priorities of liens where there is a renewal or extension of an earlier note secured by mortgage. We have no such situation here, nor was it asserted in the court below. Each cause of action clearly sets forth separate items of indebtedness comprising separate transactions and there has never been factual contention to the contrary. Separate judgments were rendered upon each item of indebtedness and the whole record completely negatives any idea of later extension or renewal notes secured by appellant's real estate mortgages. Nor are future advances involved.

Appellant makes some contention in its second point on appeal that the trial court erred in its ruling as to the amount of mortgage registration tax necessary to be paid by appellant to support its claim to a lien on the sale proceeds for the full face amount of its

mortgages. The record on appeal contains no such ruling by the trial court nor any indication that the priorities adjudged were based on any want of further payment of mortgage registration tax by appellant. Appellant initially paid the proper amount of mortgage registration tax on each of its real estate mortgages (K. S. A. Ch. 79, Art. 31) and further payment of registration tax, or want thereof, was not an issue determinative of any right of appellant in this action.

A single indebtedness was secured by each of appellant's real estate mortgages. That indebtedness and corresponding liens, along with appellee's lien, have been correctly adjudicated and the proper priorities established. The trial court's judgment is affirmed.

APPROVED BY THE COURT.