In re Walter L. JOHNSON and Kathleen M. Johnson, Debtors.

Bankruptcy Nos. 88–4030–R, 87–4106–12.

United States District Court, D. Kansas.

Sept. 21, 1989.

Walter L. Johnson, Kathleen M. Johnson, Emmett, Kan., pro se.

Lawrence H. Vogel, Vogel & Oleen, Manhattan, Kan., for debtors-appellees.

Terry E. Beck, Tilton, Beck & Hoffman, Anne L. Baker, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for appellant.

Edward J. Nazar, Redmond, Redmond, O'Brien & Nazar, Witchita, Kan., trustee.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from an order of the bankruptcy court. Appellant Silver Lake Bank (Bank) appeals from an order in which the bankruptcy court found that a note of the Bank was not secured by a subsequently executed security agreement containing a "dragnet clause".[1] Debtors/appellees have filed a timely responsive

---

1. "Dragnet clauses" are those which purport to secure all debts, past, present and future, between the parties to a security agreement or a real estate mortgage. The clauses are referred to by the courts under several names, but the most popular and generally used is "dragnet clause." We shall use this term in this opinion.

brief. The Kansas Bankers Association has filed an amicus curiae brief in support of the Bank's position.

The facts are undisputed. On May 1, 1984, the debtors executed a promissory note in favor of the Bank in the amount of $52,070.28. The loan proceeds were used for farming operations. The note was secured by a real estate mortgage. The note was renewed on September 14, 1985 and on January 13, 1986, with each renewal bearing note No. 4013R.

On April 4, 1986, the debtors executed another promissory note in the amount of $66,889.22 in favor of the Bank. This note was designated No. 5022T. The note stated that the purpose of the loan was "RN, Farm Operating Expense Combine 4998AT, 4371T, 4893T and 3308T + interest & 4013R Interest." The debtors also executed a security agreement on April 4, 1986 transferring an interest in their livestock, machinery, equipment and growing wheat. The growing wheat was planted on the land subject to the lien of the real estate mortgage. The security agreement contained a "dragnet" clause which stated as follows:

> The security interest granted the Bank hereunder shall secure all obligations of the undersigned to the Bank, howsoever created, evidenced or arising, whether direct or indirect, absolute or contingent, or now or hereafter existing or due or to become due ("Obligations").

The security agreement also contained the following provision:

> If the Collateral is to be attached to real estate, the legal description of the real estate is as follows: _____ and the name of the record owner is _____ and if Collateral is attached to real estate prior to the perfection of the security interest granted hereby, the Debtor will on demand of the Secured Party furnish the latter with a disclaimer or disclaimers, signed by all persons having an interest in the real estate, or any interest in the Collateral which is prior to the Secured Party's interest.

The blanks in this provision were not filled in by the parties.

A foreclosure action with respect to the real property securing the May 1, 1984 note was brought by other creditors prior to the debtors' bankruptcy. The subsequent proceedings left the Bank with a deficiency because they had third priority. The debtors filed a Chapter 12 bankruptcy petition on July 7, 1987. In the bankruptcy, the Bank contended that the deficiency was secured by the debtors' personal property pledged in the April 4, 1986 security agreement because of the aforementioned dragnet clause.

The bankruptcy court, relying on *Emporia State Bank & Trust Co. v. Mounkes*, 214 Kan. 178, 519 P.2d 618 (1974) and *First National Bank & Trust Co. v. Lygrisse*, 7 Kan.App.2d 291, 292, 640 P.2d 1274 (1982), held that the security agreement of April 4, 1986 did not secure the prior mortgage because the Bank had failed to demonstrate that the parties clearly intended the security agreement to secure the prior mortgage. The bankruptcy court focused on the fact that the aforementioned portion of the security agreement relating to collateral to be attached to real estate had been left blank.

The Bank and the amicus curiae contend that the bankruptcy court erred in disregarding the dragnet clause under the circumstances of this case. They assert that the court incorrectly relied on Kansas cases construing dragnet clauses in real estate mortgages and failed to consider Article 9 of the Uniform Commercial Code (UCC). The debtors believe that the bankruptcy court correctly concentrated on the intention of the parties and reached the correct conclusion.

 The parties agree that the court is presented only with issues of law for review. The bankruptcy court's legal conclusions are subject to de novo review by this court. *In re Mullet*, 817 F.2d 677, 678 (10th Cir.1987).

 The Kansas Supreme Court has on several occasions considered dragnet clauses contained in real estate mortgages.

*See First National Bank in Wichita v. Fink,* 241 Kan. 321, 736 P.2d 909 (1987) and cases cited therein. In these cases, the Court has adopted several rules. First, dragnet clauses are not highly regarded in equity and should be carefully scrutinized and strictly construed. *Emporia State Bank & Trust Co. v. Mounkes, supra,* 519 P.2d at 621. Second, the intention of the parties is determinative as to the applicability of a dragnet clause. *Id.* Third, subsequent debts may be secured under the dragnet clause of a real estate mortgage by specifically stating on the face of the new note that it is secured by the prior mortgage or by showing that the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, that originally secured by the mortgage. *First National Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, 647 P.2d 1268, 1271–72 (1982). Fourth, antecedent debts may be secured by a mortgage containing a dragnet clause only if the antecedent debts are clearly identified in the mortgage. *Id.,* 647 P.2d at 1271. Finally, the previous rule has no application where subsequent notes specifically indicate that certain antecedent debts were intended to be secured. *Id.,* 647 P.2d at 1273.

■ The key question is whether these rules should be applied in this case where we are not concerned with a dragnet clause contained in a real estate mortgage. Here, the dragnet clause was contained in a security agreement governed by the UCC. This issue appears to be one of first impression in Kansas since the prior cases deal exclusively with dragnet clauses in real estate mortgages.

We recognize that some courts have failed to discern any difference in the analysis that should be applied to dragnet clauses contained in real estate mortgages as opposed to agreements governed by the UCC. *See, e.g., Schmitz v. Grudzinski,* 141 Wis.2d 867, 416 N.W.2d 639, 642 (Wis. App.1987). Nevertheless, other courts have recognized a difference and applied different rules. *See, e.g., First National*

*Bank v. First Interstate Bank,* 774 P.2d 645, 648 (Wyo.1989).

We believe that different rules should apply here. The statutory scheme of Article 9 of the UCC is not in all respects consistent with the Kansas common law concerning real estate mortgages. First, the definition of value in Article 9 changes prior Kansas law by defining value in situations involving the taking of property in satisfaction of a preexisting debt. K.S.A. 84–1–201(44) Kansas comment (1983). Second, the rule that a real estate mortgage containing a dragnet clause secures antecedent debts only if the antecedent debt is clearly identified in the mortgage conflicts with Article 9. Under Article 9, security agreements are effective according to their terms between the parties, and there is no requirement that the security agreement identify the debt secured. K.S.A. 84–9–201; K.S.A. 84–9–203(1). The security agreement must only contain a "broad description of the obligation secured." K.S.A. 84–9–203 Kansas comment (1983).

Having concluded that we must be guided by the provisions of the UCC, we turn to an examination of the applicable rules. Generally, a "security agreement is effective according to its terms between the parties." K.S.A. 84–9–201. A security interest is created by the debtor signing a security agreement which contains a description of the collateral and, where the security interest covers crops, a description of the land concerned. K.S.A. 84–9–203(1)(a). A security interest attaches when there is a security agreement signed by the debtor, value is given, and the debtor has rights in the collateral. K.S.A. 84–9–203(2). A person gives value for a security interest when he acquires the security for a preexisting claim. K.S.A. 84–1–201(44)(b).

■ There can be no dispute that the security agreement between the Bank and the debtors met the requirement for value. A creditor gives value under Kansas law when the collateral secures a preexisting indebtedness. K.S.A. 84–9–203 Kansas comment (1983). The security agreement specifically provided that all amounts owed

to the Bank, whether then existing or later advanced, were covered by the security agreement. The livestock, machinery, equipment and growing crops were specifically described as the collateral. At the time the security agreement was made, the debtors owed the Bank money on the previous note made on May 1, 1984. The agreement clearly manifests the intention of the parties that the machinery, equipment and growing crops would serve as collateral to secure the existing debt. *See First National Bank v. First Interstate Bank, supra,* at 647. If the language used by the parties is plain, complete and unambiguous, the intention of the parties must be gathered from the language and that language alone. *First National Bank & Trust Co. v. Lygrisse, supra,* 647 P.2d at 1272. The debtors had the rights of ownership in the collateral listed on the April 4, 1986 agreement, and the security interest of the Bank attached when the security agreement was signed on that date. We believe that the bankruptcy court erred in relying on the blanks contained in the portion of the security agreement directed at collateral "to be attached to real estate." This provision in the security agreement clearly relates to fixtures and growing crops. The use of the word "attached" in this provision requires this conclusion since "attached" signifies the union of two independent structures or objects. Thus, property to be attached to be real estate would be fixtures or growing crops. The debtors incorrectly seek to have this provision rewritten to read as follows: "If the collateral is to be *secured by* real estate...."

In sum, we find that the bankruptcy court erred in holding that the note of May 1, 1984 was not secured by the collateral designated in the security agreement of April 4, 1986. Accordingly, the judgment of the bankruptcy court is reversed and this case is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.