949 F.2d 321
 16 UCC Rep.Serv.2d 1177
 BANK OF KANSAS, Plaintiff-Appellee,
v.
NELSON MUSIC COMPANY, INC., Charles W. Davison, Brad C.
Davison, United States of America, and Federal Deposit
Insurance Corporation, as successor in interest to Sylvia
State Bank, Defendants-Appellees,
First National Bank of Kingman, Kansas, Defendant-Appellant,
and
Yamaha Music Finance, Inc., formerly known as Yamaha Music
Corporation U.S.A., Turon State Bank, as successor to Sylvia
State Bank, El Paso County Bank, Transamerica Commercial
Finance Corporation, Steinway & Sons, Wichita Piano and
Organ, Inc., Defendants.
 No. 90-3139.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 13, 1991.
 
 Kevin J. Arnel of Foulston & Siefkin, Wichita, Kan. (Terry C. Cupps, on the brief), for plaintiff-appellee.
 Victor S. Nelson of Morrison, Hecker, Curtis, Kuder & Parrish, Wichita, Kan., for defendant-appellee FDIC.
 Theodore C. Geisert of Geisert & Watkins, Kingman, Kansas (Curtis E. Watkins, on the brief), for defendant-appellant.
 Before EBEL and McWILLIAMS, Circuit Judges, and ALLEY,* District Judge.
 EBEL, Circuit Judge.
 
 
 1
 This appeal involves a dispute between creditors over the priorities of security interests and liens in the inventory of Nelson Music Company, Inc. The district court granted summary judgment in favor of plaintiff-appellee Bank of Kansas. We reverse the district court and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 2
 Wichita Piano and Organ, Inc. ("Wichita") and Nelson Music Company, Inc. ("Nelson") are Kansas corporations wholly owned by Charles W. Davison. On February 25, 1985, Wichita entered into a loan agreement with First National Bank, Kingman, Kansas ("Kingman Bank"). In return for the loan, Wichita executed a promissory note and security agreement to Kingman Bank. The following day--February 26, 1985--Nelson, through Charles Davison, executed a guaranty agreement whereby it guaranteed Wichita's indebtedness to Kingman Bank. On February 27, 1985--the very next day--Nelson entered into its own loan agreement with Kingman Bank. The promissory note for that loan specifically referenced a security agreement dated February 27, 1985, which granted Kingman Bank a security interest in Nelson's inventory of Gulbransen organs.[1] That security agreement contained a "dragnet clause" which stated the following: "The security interest ... shall secure all obligations of the undersigned to the Bank, howsoever created, evidenced or arising, whether direct or indirect, absolute or contingent, or now or hereafter existing, or due or to become due...." (emphasis added).[2] On February 28, 1985, Kingman Bank perfected the security agreement by filing a financing statement with the Kansas Secretary of State.
 
 
 3
 Almost one year later, on February 13, 1986, Nelson entered into a revolving loan agreement with a second bank, the Bank of Kansas. Under the terms of that agreement, Nelson granted the Bank of Kansas a security interest in "[a]ll inventory and accounts receivable...." The Bank perfected that security interest on February 26, 1986.
 
 
 4
 In June of 1986, Nelson paid off the February 27, 1985 promissory note. However, some time later, Wichita defaulted on the February 25, 1985 note. Kingman Bank commenced a suit in Kansas court against Wichita (and Davison and Nelson as guarantors) and won a judgment to recover the balance of its loan to Wichita. Bank of Kansas subsequently brought this suit to protect and foreclose its security interest in the Nelson inventory. Kingman Bank was joined as a defendant and it argued that it had a prior claim over Nelson's Gulbransen organ inventory. According to Kingman Bank, Nelson's February 26, 1985 guaranty was an obligation covered by the "dragnet clause" of the February 27, 1985 security agreement. Thus, Kingman Bank asserted that the guaranty obligation was secured by the interest in the Gulbransen organs. Bank of Kansas countered that the February 27, 1985 security agreement between Nelson and Kingman Bank secured only the promissory note entered into on the same date and that Kingman Bank's security interest in Nelson's Gulbransen organ inventory expired when the Nelson promissory note was paid off in June 1986.
 
 
 5
 The case was removed to federal court, where both sides moved for summary judgment. The district court granted summary judgment for Bank of Kansas, and Kingman Bank now appeals.
 
 ANALYSIS
 
 6
 Since this is an appeal of a summary judgment order, we review the district court's order de novo. Osgood v. State Farm Mut. Auto Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). The district court granted Bank of Kansas' summary judgment motion after concluding that the terms of the February 27, 1985 security agreement were "doubtful and uncertain." Memorandum and Order at 23. Applying Kansas rules of contractual construction and interpretation--most notably Kansas' policy of strictly construing dragnet clauses in mortgage contracts[3]--the court found that "[s]ince the Kingman Bank prepared the documents in question, it should not be permitted to benefit from the ambiguities present in such documents." Id. at 24.
 
 
 7
 We disagree with the district court's conclusion that the security agreement was ambiguous. According to the Uniform Commercial Code, incorporated into the Kansas Statutes at K.S.A. 84-1-101 et seq., "a security agreement is effective according to its terms between the parties...." K.S.A. 84-9-201. Nowhere does the Code require a specific description of the debt obligation to be secured. Rather, the security agreement need only contain a "broad description of the obligations secured...." Kansas Comment 1983 at K.S.A. 84-9-203. The February 27, 1985 security agreement met that requirement. It can not be doubted that Nelson's guaranty agreement of February 26 was an "obligation" of Nelson. And, the security agreement specifically pledged to secure "all obligations of the undersigned to the Bank, howsoever created, evidenced or arising, whether direct or indirect, absolute or contingent, or now or hereafter existing, or due or to become due...." It is difficult to see how that language could be interpreted in such a way as not to include the February 26, 1985 guaranty between Nelson and the bank.
 
 
 8
 Moreover, we find that the Kansas U.C.C. contains no general policy against the use of dragnet clauses in security agreements. Factors which have appeared to motivate Kansas' policy disfavoring dragnet clauses are not applicable here. Such factors include (1) unsophisticated parties with unequal bargaining strength,[4] (2) application of the dragnet clause to unrelated, dissimilar, and often distant obligations,[5] and (3) existence of the dragnet clause in real estate mortgages, which cloud title.[6] Here, the parties are all sophisticated commercial entities; the dragnet clause applied to a closely related transaction; and it did not encumber real estate. Thus, to the extent that the language of the dragnet clause were ambiguous--and, as noted above, we do not believe that the clause at issue is ambiguous--a parsimonious reading is not warranted.[7]
 
 
 9
 Our conclusion finds support in the case of In re Johnson, 105 B.R. 661 (D.Kan.1989). There, the district court reversed a bankruptcy court's restrictive reading of a dragnet clause in a security agreement between sophisticated parties that secured a related loan with non-real collateral. In this context, the court observed that:
 
 
 10
 [u]nder Article 9, security agreements are effective according to the their terms between the parties, and there is no requirement that the security agreement identify the debt secured. K.S.A. 84-9-201; K.S.A. 84-9-203(1). The security agreement must only contain a "broad description of the obligation secured." K.S.A. 84-9-203 Kansas comment (1983).
 
 
 11
 Id. at 664 (emphasis added). The court held that "[i]f the language used by the parties is plain, complete and unambiguous, the intention of the parties must be gathered from the language and that language alone." Id. at 665.[8] We agree, and on the basis of the "plain, complete and unambiguous" language of the agreement, we conclude as a matter of law that the parties secured all obligations between Nelson and Kingman Bank by the February 27 security agreement, including the February 26 guarantee.
 
 CONCLUSION
 
 12
 For these reasons, we REVERSE the district court's summary judgment order and REMAND for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Wayne E. Alley, District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 That promissory note stated that "[t]his loan is secured by Security Agreement dated 2-27-85, executed by or for the debtor in favor of the holder. This Security Agreement will secure future or other indebtedness and will cover after acquired property." (emphasis added)
 
 
 [2]
 Disbursements were made pursuant to both notes only after all of the above referenced documentation had been effected
 
 
 [3]
 A dragnet clause is one which purports to secure all debts--past, present, and future--between the parties to a security agreement or real estate mortgage. Kansas, like many other jurisdictions, has disfavored such clauses in the mortgage context. According to the Kansas Supreme Court, "[m]ortgages of this character have been denominated 'anaconda mortgages' and are well named thus, as by their broad and general terms they enwrap the unsuspecting debtor in the folds of indebtedness...." Emporia State Bank & Trust Co. v. Mounkes, 214 Kan. 178, 519 P.2d 618, 621 (1974) (quoting Berger v. Fuller, 180 Ark. 372, 21 S.W.2d 419, 421 (1929)). To protect against such abuses, Kansas courts have held that:
 in the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.
 Id. 519 P.2d at 623. More to the point for our purposes, Kansas has expressed a similar antipathy toward dragnet clauses in a subsequent mortgage securing a prior debt. Ram Co. v. Estate of Kobbeman, 236 Kan. 751, 696 P.2d 936, 942 (1985).
 
 
 [4]
 Although acknowledging that "there are judicial limits in Kansas on the breadth of 'dragnet clauses,' " the Comment to K.S.A. 84-9-204 concedes that "[o]f course if the debtor is a commercial entity rather than a consumer, the courts might well give a broader reading of a dragnet clause, particularly given the clear authorization of optional future advances found in this subsection." (Emphasis added). Thus, the authorization of dragnet clauses in the U.C.C., which primarily regulates sophisticated commercial actors, appears consistent with Kansas law, which may be wary of such clauses in other contexts
 
 
 [5]
 See Ram Co. v. Estate of Kobbeman, 236 Kan. 751, 696 P.2d 936, 942 (1985) (dragnet clause in subsequent security agreement upheld where it secures an antecedent debt "of the same kind or quality, or [arising] out of the same transaction or series of transactions as the prior loan")
 
 
 [6]
 Many states have disfavored dragnet or anaconda clauses in the real estate context, as such clauses can tie up title indefinitely. Kansas does not appear to be an exception to this rule, as its cases disfavoring dragnet clauses are almost always in the context of clause granting a security interest in real estate. See Mark Twain Kansas City Bank v. Cates, 248 Kan. 700, 810 P.2d 1154 (1991); First Nat'l Bank in Wichita v. Fink, 241 Kan. 321, 736 P.2d 909 (1987); First Nat'l Bank & Trust Co. v. Lygrisse, 231 Kan. 595, 647 P.2d 1268 (1982); Emporia State Bank & Trust Co. v. Mounkes, 214 Kan. 178, 519 P.2d 618 (1974); Stockyards Nat'l Bank v. Capital Steel & Iron Co., 201 Kan. 429, 441 P.2d 301 (1968). The one case that arose in the context of a chattel mortgage was Sowder v. Lawrence, 129 Kan. 135, 281 P. 921 (1929). However, that case was pre-U.C.C. We can not ignore the clear language of the U.C.C. authorizing dragnet clauses in the context of the commercial transactions involved in this case
 
 
 [7]
 The "underlying purposes and policies of [the Kansas U.C.C. include] ... (b) to permit the continued expansion of commercial practices through custom, usage and agreements of the parties." K.S.A. 84-1-102. A literal, rather than a hostile, reading of this dragnet clause will best accomplish this statutory purpose
 
 
 [8]
 In support of its conclusion, Johnson noted that the Wyoming Supreme Court reached a similar conclusion in First Nat'l Bank v. First Interstate Bank, 774 P.2d 645, 647-50 (Wyo.1989) (chattel security agreement need not specify the antecedent debt where the agreement plainly states that it secured "all amounts I owe to the Bank, whether now or later"). See also In re Riss Tanning Corp., 468 F.2d 1211 (2d Cir.1972) (holding that, under New York law, a dragnet clause in a chattel security agreement covered a contemporaneous but not specifically referenced debt)