(893 P.2d 275)

No. 71,834

ED BALDWIN d/b/a BUDGET HOST INN, *Appellee*, v. HAYS ASPHALT CONSTRUCTION, INC., *Appellant*.

—

Opinion filed April 7, 1995.

*John A. O'Leary*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, for appellant.

*Jerry D. Fairbanks*, of Goodland, for appellee.

Before LEWIS, P.J., ELLIOTT, J., and DAVID W. KENNEDY, District Judge, assigned.

ELLIOTT, J.: Ellis County Equipment Company (ECE) appeals the trial court's ruling it did not have a security interest in certain assets of Hays Asphalt Construction, Inc. (HAC).

We reverse and remand.

The facts are essentially undisputed. Ed Baldwin d/b/a Budget Host Inn obtained a default judgment against HAC. The City of Ness City owed HAC money which Baldwin sought to garnish in order to collect his judgment.

ECE intervened in the garnishment, claiming a prior security interest in HAC's accounts receivable. ECE claims it leased certain equipment to HAC and to secure HAC's performance under the lease, ECE claims HAC gave it a security interest in, *inter alia*, its receivables. ECE produced three documents to support

its claim: a security agreement, a lease agreement, and a financing statement signed by HAC and filed with the Secretary of State.

The magistrate judge found ECE did not have a security interest in HAC's receivables, and the district court ruled similarly on appeal.

ECE first argues the trial court erroneously ruled that a lease may not be secured with a Uniform Commercial Code (UCC) Article 9 security interest. We agree.

Interpretation of the UCC is a question of law, and thus our review is plenary. See *City of Lakin v. Kansas Employment Security Bd. of Review*, 19 Kan. App. 2d 188, 189, 865 P.2d 223 (1993).

Our commercial code applies to *any* transaction, regardless of form, intended to create a security interest in personal property. K.S.A. 84-9-102(1)(a). A security interest is an interest in personal property which secures payment or performance of an obligation. K.S.A. 84-1-201(37). Before a security interest can attach, the secured party must give value to the debtor. K.S.A. 1994 Supp. 84-9-203(1)(b). And a person gives value for rights if the person acquires them in return for any consideration sufficient to support a simple contract. K.S.A. 84-1-201(44)(d).

Clearly, under these provisions, a lease may be secured with an Article 9 security interest, which would or could secure the payment or performance of the lease obligations; the lease itself constitutes consideration sufficient to support a simple contract.

The Florida Court of Appeals, in a strikingly similar case, reached the same conclusion. There, the court applied the definition of "value" (identical to the Kansas definition) and held that although a lessor

"cannot be both an exclusive owner and a secured creditor concerning the leased equipment, there is nothing in the statutes or in logic which prevents [the lessor] from receiving a security interest in one property, *i.e.*, the accounts receivable, to protect its ownership interest in another property, *i.e.*, the leased equipment." *Bruno v. Fleet Credit Corp.*, 564 So. 2d 599, 600 (Fla. Dist. App. 1990).

The trial court's ruling that a lease may be an obligation that can be the basis for a security interest conflicts with its ruling that ECE did not give HAC any value or consideration for the

security agreement. A lease may be secured with an Article 9 security interest, and ECE may secure its lease with a security interest in HAC's receivables.

The trial court erred in ruling ECE did not give value or consideration for the security agreement.

The trial court also found that the documents produced by ECE do not show the parties intended to secure the lease. This issue is somewhat confused by what may or may not be a typographical error in dates on the documents, which became the centerpiece of ECE's motion for reconsideration. We view the discrepancy of dates immaterial. But a few additional facts might prove helpful at this juncture. The security agreement is dated March 8, 1990, while the lease is dated in May 1992. The financing statement is not dated but was filed September 8, 1992 (as part of the motion for reconsideration, an affidavit was filed stating HAC was not organized until 1992).

Regardless, Baldwin claims ECE has no security interest in HAC's receivables because there is no reference in one document to the other indicating that they were tied together.

A security agreement is simply an agreement which creates or provides for a security interest. K.S.A. 1994 Supp. 84-9-105(1). A security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors. K.S.A. 84-9-201.

Further, K.S.A. 1994 Supp. 84-9-203(1) provides:

"[A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

"(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . .;

"(b) value has been given; and

"(c) the debtor has rights in the collateral."

These are the only three sections of the UCC dealing with the requirements of a security agreement. Nothing requires the security agreement to reference the underlying obligation, or vice versa, before the security will attach.

The only reference to describing the underlying transaction in a security agreement is found in the 1983 Kansas Comment to

84-9-203. That comment lists six items that a typical security agreement contains, including "a broad description of the obligations secured."

Unfortunately, the only Kansas cases dealing with the issue all involve the meaning of "dragnet" or "anaconda" clauses—provisions attempting to secure all obligations between the debtor and the secured party.

In the present case, the security agreement contains a dragnet clause, but our cases interpreting those clauses do not help much here because they all concern real estate mortgages. Article 9 does not apply to liens on realty. K.S.A. 84-9-104(j); *Ingram v. Ingram*, 214 Kan. 415, 423, 521 P.2d 254 (1974).

The problem was at least recognized in *In re Johnson*, 105 Bankr. 661 (D. Kan. 1989), where the issue was whether the dragnet clause was adequate to sweep up a preexisting debt between the parties. The court noted that under the 1983 Kansas Comment to 84-9-203, the security agreement "must only contain" a broad description of the underlying obligation. 105 Bankr. at 664.

That is an overstatement. The comment does *not* state a security agreement must contain a broad description of the secured debt, nor does it say it must contain any description at all. Rather, it states the *typical* security agreement used by Kansas creditors contains a broad description of the secured debt.

Nonetheless, the *Johnson* court held the security agreement securing "all obligations of the undersigned to the Bank, . . . now or hereafter existing or due or to become due," secured the preexisting debt in question. 105 Bankr. at 663-65.

Likewise, *Bank of Kansas v. Nelson Music Co., Inc.*, 949 F.2d 321 (10th Cir. 1991), applied the language of the Kansas Comment in construing a security agreement containing a dragnet clause. The court held that the language "shall secure all obligations of the undersigned to the Bank, howsoever created" was a broad description of the obligation secured and therefore covered a preexisting debt between the parties. 949 F.2d at 322-24.

We hold the Kansas UCC does not require any mention of the obligation secured, but even if the statutes require a broad description of the obligation secured as indicated by *Johnson* and

*Bank of Kansas*, the security agreement in the present case sufficiently does so.

In determining whether a security interest exists, the intent of the parties controls, and that intent may best be determined by examining the language used and considering the conditions and circumstances confronting the parties when the contract was made. See *City of Arkansas City v. Anderson*, 242 Kan. 875, 883, 752 P.2d 673 (1988).

In the present case, neither the magistrate judge nor the district judge considered any evidence or testimony at all.

The security agreement provides:

"1. . . . In consideration of one or more loans, advances, or other financial accommodations at any time made or extended by *ELLIS COUNTY EQUIP-MENT, INC.*, (The 'Secured Party') to the undersigned; the undersigned hereby grants the Secured Party a security interest in the Collateral as security for the payment, performance, and observance by the undersigned [of] the Obligations . . . .

"2. . . . The term 'Obligations' shall include all indebtedness, obligations, and liabilities of any kind of the undersigned to the Secured Party . . . now existing or hereafter arising . . . .

"The term 'Collateral' shall include . . . all present and hereafter existing or acquired accounts [and] contract rights . . . ."

The lease provides:

"18. . . . Lessee will promptly execute and deliver to Lessor such further documents and take such further action as Lessor may request in order to more effectively carry out the intent and purpose hereof, including without limitation:
. . . .

"(b) the taking of such further action as Lessor may deem desirable to fully protect Lessor's interest hereunder in accordance with the Uniform Commercial Code or other applicable law. Lessee hereby authorizes Lessor to effect any such filings as aforesaid (including the filing of any financial statements under the Uniform Commercial Code without the signature of Lessee) . . . ."

Read together, these two documents indicate an intent by HAC to grant ECE a security interest in HAC's receivables to secure all described obligations owing to ECE. This intent is further evidenced by the financing statement containing a description of the collateral identical to that contained in the security agreement.

This brings us to the question of the dates. According to the stipulated facts, the security agreement was dated in 1990, and

the lease agreement and the January statement were executed or filed in 1992. The district court seems to have found those dates as indicative of the parties' lack of intent to create a security interest.

Under our reading of the UCC, timing is irrelevant. K.S.A. 1994 Supp. 84-9-203(1) provides only that the three listed events must occur before a security interest will attach—it does not state a sequential requirement. To interpret this statute otherwise would invalidate countless security agreements containing future advance clauses, contrary to 84-9-204(3).

Further, we must emphasize one additional fact. This dispute is *not* between HAC and ECE, the parties to the security agreement. Rather, this dispute is between two competing creditors. There is no evidence in the record that HAC disputed the existence of a security agreement between HAC and ECE.

The documents clearly demonstrate HAC's intent to grant ECE a security interest to secure the lease, and the discrepancy as to the dates does not invalidate that intent.

Reversed and remanded.